UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:24-CV-00001-HBB

**STELLA M.**[1]                                                                    **PLAINTIFF**

**VS.**

**MARTIN O'MALLEY, COMMISSIONER**
**SOCIAL SECURITY**[2]                                                       **DEFENDANT**

## MEMORANDUM OPINION
## AND ORDER

### I.        BACKGROUND

Before the Court is the Complaint (DN 1) of Stella M. ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).   Plaintiff and Defendant have filed briefs with a Fact and Law Summary (DN 13, 15).   Plaintiff has also filed a reply (DN 16).   For the reasons that follow, the final decision of the Commissioner is **AFFIRMED**.

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 11).   By Order entered March 6, 2024 (DN 12), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted.   No such request was filed.

---

1 Pursuant to General Order 22-05, Plaintiff's name in this matter was shortened to first name and last initial.
2 Martin O'Malley became the Commissioner of Social Security on December 20, 2023.   Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley is substituted as the defendant in this suit.

## II.     FINDINGS OF FACT

On March 19, 2021, Plaintiff protectively filed an application for Disability Insurance Benefits (Tr. 15, 178-80, 181-87).   Plaintiff alleged that she became disabled on July 28, 2020, as a result of arthritis; plantar fasciitis left foot; tremors; both knees - need replacement; bone spur in left foot; high blood pressure; heart disease; anxiety; depression; hiatal hernia; and migraines (Tr. 15, 70, 76, 222).   The application was denied initially on August 31, 2021, and upon reconsideration on February 22, 2022 (Tr. 15, 69, 83).   On March 23, 2022, Plaintiff filed a written request for hearing (Tr. 15, 107-08).

On November 30, 2022, Administrative Law Judge David Peeples ("ALJ") conducted a telephone hearing due to the extraordinary circumstances presented by the COVID-19 pandemic (Tr. 15, 32).   Plaintiff and her counsel, Jesse R. Poag, participated and Plaintiff testified during the hearing (*Id.*).   Renee Smith, an impartial vocational expert, also testified during the hearing (*Id.*).

In a decision dated February 21, 2024, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2025 (Tr. 17).   The ALJ evaluated Plaintiff's adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 17-25).   At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since July 28, 2020, the alleged onset date (Tr. 17).   At the second step, the ALJ determined that Plaintiff has the following severe impairments: arthritis; plantar fasciitis; tremors; osteoarthritis of the bilateral knees; migraines; and obesity (Id.).   The ALJ also determined that Plaintiff has the following non-severe impairments: hypertension; hiatal hernia; bone spur; anxiety disorder; and depression (Tr. 18).   At the third step, the ALJ concluded

2

that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 19).

At step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform a range of medium work, as defined in 20 CFR 404.1567(c), because she can lift/carry and push/pull 50 pounds occasionally and 25 pounds frequently; she can stand and/or walk for four hours in an eight-hour day with occasional use of a cane for ambulation; she can sit for six hours in an eight-hour day with normal breaks; she can frequently climb ramps/stairs and can occasionally climb ladders/ropes/scaffolds; she can occasionally stoop, kneel, crouch, and crawl; she should avoid concentrated exposure to hazards such as unprotected heights or moving mechanical parts (*Id.*).   Additionally, the ALJ determined that Plaintiff is unable to perform any past relevant work (Tr. 23).

The ALJ proceeded to the fifth step where he considered Plaintiff's RFC, age, education, and past work experience as well as testimony from the vocational expert (Tr. 23-24).   The ALJ found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (*Id.*).   Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from July 28, 2020, through the date of the decision (Tr. 25).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 176-77).   The Appeals Council denied Plaintiff's request for review (Tr. 1-3).

### III.    CONCLUSIONS OF LAW

#### A.    Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); *Cotton*

*v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993); *Wyatt v. Sec'y of Health & Hum. Servs.*, 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied.  *Landsaw v. Sec'y of Health & Hum. Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).  "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way."  *Cotton*, 2 F.3d at 695 (quoting *Casey v. Sec'y of Health & Hum. Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993)).  In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility."  *Cohen v. Sec'y of Health & Hum. Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (quoting *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3).  At that point, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision).  Thus, the Court will be reviewing the ALJ's decision and the evidence that was in the administrative record when the ALJ rendered the decision.  42 U.S.C. § 405(g); 20 C.F.R. § 404.981; *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton*, 2 F.3d at 695-96.

B.    The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits to persons with disabilities.  42 U.S.C. § 401 et seq. (Title II Disability Insurance Benefits).  The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

4

42 U.S.C. § 423(d)(1)(A) (Title II); 20 C.F.R. § 404.1505(a); *Barnhart v. Walton*, 535 U.S. 212,

214 (2002); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential

evaluation process for evaluating a disability claim.   *See* "Evaluation of disability in general," 20

C.F.R. § 404.1520.   In summary, the evaluation proceeds as follows:

    1)      Is the claimant engaged in substantial gainful activity?

    2)      Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

    3)      Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

    4)      Does the claimant have the RFC to return to his or her past relevant work?

    5)      Does the claimant's RFC, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

20 C.F.R. § 404.1520(a)(4)(i)-(v).   Here, the ALJ denied Plaintiff's claim at the fifth step.

C.      Finding No. 5

*1.  Arguments of the Parties*

Plaintiff believes that the RFC determination in Finding No. 5 is not supported by

substantial evidence because the ALJ committed legal error by failing to consider the

supportability factor in assessing the persuasiveness of an opinion rendered by consultative

psychological examiner Marcy Walpert, M.A., LPP (DN 13 PageID # 1491-96).[3]   Plaintiff

---

3 Plaintiff acknowledges that the ALJ considered the consistency factor in assessing Ms. Walpert's opinion (DN 13 PageID 1494).

contends that Ms. Walpert's opinion was supported by her own examination of Plaintiff which revealed impaired recent memory and calculation ability (DN 13 PageID # 1494) (citing Tr. 754-55, 757).   Plaintiff asserts that the ALJ's error was harmful because the moderate psychological restrictions assessed by Ms. Walpert, which would have significantly eroded Plaintiff's occupational base and justified a finding of disability, were not included in the RFC findings and the hypothetical questions posed to the vocational expert (*Id.*).

In response, Defendant contends that the ALJ sufficiently evaluated the supportability of Ms. Walpert's consultative psychological opinion (DN 15 PageID # 1509-12) (citing Tr. 18-19, 23).   While the ALJ did not explicitly compare Ms. Walpert's examination findings and her opinion, the ALJ's reasons for not finding some of her opinion persuasive may be gleaned from factual findings made elsewhere in the ALJ's decision (*Id.*).   *See Lillian A. v. O'Malley*, No. 4:23-CV-4-CRS-HBB, 2024 WL 987571, at *2 (W.D. Ky. Mar. 7, 2024).   The ALJ's conclusion—moderate limitations were not supported by Ms. Walpert's examination findings—can be found in the ALJ's step-two discussion wherein he determined Plaintiff's mental impairments were not severe (*Id.*) (citing Tr. 18-19).

In reply, Plaintiff asserts that Finding No. 5 was deficient because the ALJ failed to properly evaluate Ms. Walpert's opinion (DN 16 PageID # 1517-20).   Plaintiff contends that Defendant has merely provided a post hoc rationalization for the ALJ's failure to address the supportability factor when evaluating the persuasiveness of Ms. Walpert's consultative opinions (*Id.*).

2.  *Applicable Law*

The residual functional capacity determination is the Administrative Law Judge's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546(c).   Administrative Law Judges make this finding based on a consideration of medical source statements, prior administrative medical findings, and all other evidence in the case record.   20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c).   Thus, in making the residual functional capacity determination Administrative Law Judges must necessarily evaluate the persuasiveness of the medical source statements and prior administrative medical findings in the record as well as assess the claimant's subjective allegations.   20 C.F.R. §§ 404.1520c, 404.1529(a).

The new regulations for evaluating medical opinions and prior administrative medical findings are applicable to Plaintiff's case because she filed her application after March 27, 2017 (Tr. 11, 216-22, 223-30).   *See* 20 C.F.R. § 404.1520c.   The new regulations explicitly indicate "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s),"[4] in the record, even if it comes from a treating medical source.   20 C.F.R. § 404.1520c(a).[5]   Instead, Administrative Law Judges will now evaluate the "persuasiveness" of medical opinions and prior administrative medical findings by utilizing the five factors listed in paragraphs (c)(1) through (c)(5) of the regulation. 20 C.F.R. § 404.1520c(a) and (b).   The five factors are supportability, consistency, relationship

---

4 At the initial and reconsideration levels State agency medical and psychological consultants review the evidence in the case record and make "administrative medical findings."   20 C.F.R. § 404.1513a(a)(1).   Administrative law judges "must consider" the administrative medical findings of non-examining state agency medical or psychological consultants according to the new regulation.   20 C.F.R. § 404.1513a(b)(1).
5 The language quoted above indicates that the new regulation has done away with the controlling weight rule in 20 C.F.R. § 404.1527(c)(2).

with the claimant, specialization, and other factors.   20 C.F.R. § 404.1520c(c)(1)-(5).[6]   Of these

five factors, the two most important are supportability and consistency.   20 C.F.R. § 404.1520c(a)

and (b)(2).   Further, the regulation requires Administrative Law Judges to explain how they

considered the supportability and consistency factors in determining the persuasiveness of the

medical source's opinion.   20 C.F.R. § 404.1520c(b)(2).   Notably, under the regulations

Administrative Law Judges "may, but are not required to, explain how" they considered the three

other factors in determining the persuasiveness of the medical source's opinion.   20 C.F.R.

§ 404.1520c(b)(2).

   *3.  Discussion*

   At the request of the state agency, Ms. Walpert conducted a consultative psychological

examination of Plaintiff on February 15, 2022 (Tr. 753).   Ms. Walpert observed that Plaintiff's

grooming was good; her attitude was cooperative; her speech was clear, relevant, and coherent;

her though process was normal; there was no indication of delusions or hallucinations; she denied

suicidal or homicidal ideations; and her mood was normal throughout the examination (Tr. 754).

Ms. Walpert noted that Plaintiff was oriented to time, place, person, and situation; she was capable

of repeating up to six digits correctly in forward number sequencing; she was able to do five digits

correctly in backward number sequencing; she was capable of recalling two of three words after a

five minute delay with interference; she was capable of correctly naming the most recent three

presidents; she was capable of using good abstract reasoning with each of her responses to pairs

of items; she was capable of utilizing appropriate social judgment in two of her three responses to

---

6 In assessing the relationship with the client, consideration should be given to the following: length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship.   20 C.F.R. § 404.1520c(c)(3)(i)-(v).

social judgment questions; she correctly indicated the number of months in a year, named three large cities in the United States, but did not know in what direction the sun rises; and she was able to perform correctly four of seven basic math problems (addition, subtraction, multiplication, and division) (Tr. 754-55).   Ms. Walpert diagnosed: major depressive disorder, recurrent, severe, without psychosis; panic disorder, not otherwise specified; and alcohol abuse (Tr. 757).

Ms. Walpert's medical source statement indicates that throughout the examination Plaintiff was capable of the following: understanding the tasks and instructions given; maintaining focus; and performing most all the simple repetitive tasks asked of her (*Id.*).   The medical source statement acknowledges that Plaintiff had some "slight difficulty with recent memory and social judgment on the mental status exam" (*Id.*).   Ms. Walpert's medical source statement advised that Plaintiff's symptoms of major depression and panic disorder are treatable and that she is currently receiving treatment from her family physician (*Id.*).   The medical source statement pointed out that Plaintiff "has never had any formal therapy or other mental health treatment, other than an inpatient stay in 2011" (*Id.*).   Yet in the final sentence of the medical source statement, Ms. Walpert indicated that Plaintiff's mental illness symptoms currently "seem to be causing *moderate* impairment in her daily living, social, and work-related abilities" (*Id.*) (emphasis added).

The pertinent part of the ALJ's decision reads:

> Psychological examiner Marcy Walpert assessed the claimant was capable of understanding tasks and instructions during her evaluation, maintaining focus, and performing simple repetitive tasks but had some "slight" difficulty with memory and social judgment.   She indicated the claimant's mental symptoms appeared to cause moderate impairment in her daily living, social, and work-related abilities (Exhibit B10F).   The undersigned concludes any moderate mental limitations are unsupported considering the claimant is not currently receiving any specific professional mental health treatment.   Further, recent treatment notes indicate no

9

> behavior problems, decreased concentration, or dysphoric mood
> (Exhibit B14F).

(Tr. 23).   Plaintiff contends that the ALJ considered only the consistency factor in making this

persuasiveness assessment because he cited Plaintiff's treatment history and recent treatment notes

in Exhibit B14F which is evidence from sources other than Ms. Walpert.   The undersigned

disagrees.

The regulation directs that when evaluating supportability:

> The more relevant the objective medical evidence and supporting
> explanations presented by a medical source are to support his or her
> medical opinion(s) or prior administrative medical finding(s), the
> more persuasive the medical opinions or prior administrative
> medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1).   The regulation indicates that when evaluating consistency:

> The more consistent a medical opinion(s) or prior administrative
> medical finding(s) is with the evidence from other medical sources
> and nonmedical sources in the claim, the more persuasive the
> medical opinion(s) or prior administrative medical finding(s) will
> be.

20 C.F.R. § 404.1520c(c)(2).   Thus, the supportability factor focuses on whether Ms. Walpert's

opinion is supported by the objective findings and explanations within her own report.   By

contrast, the consistency factor addresses whether Ms. Walpert's opinion is consistent with the

treatment records and nonmedical evidence in the record.

Ms. Walpert's medical source statement noted although Plaintiff is currently receiving

treatment from her family physician, she "has never had any formal therapy or other mental health

treatment, other than an inpatient stay in 2011" (Tr. 757).   The ALJ relied on this supporting

explanation in Ms. Walpert's medical source statement when he concluded that "any moderate

mental limitations are *unsupported* considering the claimant is not currently receiving any specific

professional mental health treatment" (Tr. 23) (emphasis added).   Consequently, the ALJ did consider the supportability factor in making the persuasiveness assessment of Ms. Walpert's opinion.

Assuming arguendo, that the ALJ failed to consider the supportability factor in assessing the persuasiveness of Ms. Walpert' opinion, the error would be harmless.   The Sixth Circuit has yet to articulate a harmless error test for procedural violations under § 404.1520c(b)(2).   It has, however, set forth a test for identifying harmless error for procedural violations under § 404.1527(c)(2), a regulation that applies to the evaluation of medical opinions for claims filed before March 27, 2017.   *See Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004).   Under this test, a violation of the procedural requirements in § 404.1527(c)(2) may qualify as harmless error if one of the following requirements is satisfied:

> (1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § [404.1527(c)(2)] . . . even though she has not complied with the terms of the regulation.

*Cole*, 661 F.3d at 940 (citation omitted).   Since the adoption of § 404.1520c(b)(2), courts within the Circuit have utilized the above-mentioned requirements for identifying whether procedural violations under § 404.1520c(b)(2) may qualify as harmless error.   *See, e.g., Jada H. v. O'Malley*, No. 3:22-CV-520-CRS-RSE, 2024 WL 659500, at *3-4 (W.D. Ky. Feb. 16, 2024); *Demontra D. v. Kijakazi*, No. 3:21-CV-00454-DJH-RSE, 2022 WL 4091969, at *3 (W.D. Ky. July 19, 2022), *report and recommendation adopted*, 2022 WL 4082479 (W.D. Ky. Sept. 6, 2022).

Here, the Court is concerned with only the third requirement for finding harmless error. Under this requirement, the Court is reviewing the ALJ's decision to determine whether the ALJ met the goal of § 404.1520c(b)(2) even though he has not complied with the terms of the regulation. For example, in *Vaughn v. Comm'r of Soc. Sec.*, the district court found that "the ALJ's discussion of [the claimant's] medical history [was], in essence, a discussion of whether the evidence [the non-examining physician] reviewed could actually support his conclusions." No. 20-CV-1119-TMP, 2021 WL 3056108, at *12 (W.D. Tenn. July 20, 2021). The district court explained because the ALJ's decision on the whole gave the court a logical understanding of why the ALJ believed the opinion lacked record support, the regulation's goal for the ALJ to "provide a coherent explanation of his or [her] reasoning" as to how persuasive a physician opinion is satisfied. *Id.* (cleaned up).

At step two, the ALJ relied on Ms. Walpert's objective findings and supporting explanations in Exhibit B10F,[7] the treatment notes in Exhibit B14F, and Plaintiff's own statements in Exhibit B5E, to conclude that Plaintiff's mental impairments are non-severe because, considered singly and in combination, they do not cause more than minimal limitation in Plaintiff's ability to perform basis mental work activities (Tr. 18-19, 754-55, 757, 1237-1453).[8] When the ALJ's

---

7 Ms. Walpert's report explained that Plaintiff had treatable symptoms of major depression and panic disorder and, although there was an absence of any formal therapy or other mental health treatment, Plaintiff was currently receiving treatment from her family physician who was prescribing medications for these conditions (Tr. 755, 757). Further, Ms. Walpert's objective findings indicate because of this current treatment Plaintiff's mental limitations are at most slight (Tr. 754-55, 757).

8 The ALJ's conclusion is based upon his findings that there are no limitations in first, second, and fourth broad functional areas and no more than mild limitations in the third broad functional area (Tr. 18-19). The four broad functional areas are known as the paragraph "B" criteria. See 20 C.F.R. § 404.1520a(c)(3). At the second and third steps of the sequential evaluation process, the paragraph "B" criteria are utilized to assess the degree of limitation imposed by mental impairments. 20 C.F.R. § 404.1520a(c)(3). The paragraph "B" criteria are: "1. Understand, remember, or apply information (paragraph B1)"; "2. Interact with others (paragraph B2)"; "3. Concentrate, persist, or maintain pace (paragraph B3)"; and "4. Adapt or manage oneself (paragraph B4)". 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00E1-4; *see* 20 C.F.R. § 404.1520a(c)(3). The four areas of mental functioning are evaluated on the following five-point rating scale: "None, mild, moderate, marked, and extreme." 20 C.F.R. § 404.1520a(c)(4). If

12

analysis at step two is read holistically with his persuasiveness analysis of Ms. Walpert's opinion, he has provided a logical understanding of why the ALJ believed Ms. Walpert's opinion was not supported by her own objective findings and supporting explanations, and was not consistent with the other medical evidence in the record.   Therefore, the regulation's goal for the ALJ to "provide a coherent explanation of his or [her] reasoning" as to how persuasive a physician opinion is satisfied.   For this reason, if the ALJ erred it would be harmless.

D.      Finding No. 10

*1. Arguments of the Parties*

Plaintiff believes that Finding No. 10 is not supported by substantial evidence in the record because the ALJ failed to carry his burden to show that Plaintiff was able to perform occupations that existed in significant numbers in the national economy (DN 13 PageID # 1496-1500). Plaintiff begins by arguing the ALJ failed to resolve apparent conflicts between the vocational expert's testimony and information in the Dictionary of Occupational Titles ("DOT")—concerning whether Plaintiff is able to perform the laundry laborer, counter supply clerk, and machine packager jobs—before he relied on the vocational expert's opinion to find Plaintiff is not disabled (*Id.* at PageID # 1496-98) (citing Social Security Ruling 00-4p ("SSR 00-4p")).[9]   Relatedly,

---

the four areas of mental functioning are rated as "none" or "mild," the Administrative Law Judge will generally conclude that the claimant's impairment is not "severe," unless the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities.   20 C.F.R. § 404.1520a(d)(1).

9 For example, the vocational expert identified the counter supply clerk job (DOT No. 319.687-010) in response to the ALJ's hypothetical question, which included "only occasional stooping," but the DOT indicates that job requires frequent stooping (DN 13 PageID # 1497) (citing Tr. 19).   Another example, the vocational expert identified the laundry laborer job (DOT No. 361.687-018) in response to the ALJ's hypothetical question, which included no concentrated exposure to hazards such as moving mechanical parts, but the DOT indicates that job involves use of cranes, hoists, conveyors, industrial trucks (*Id.*) (citing Tr. 19).   A further example, the vocational expert identified the machine packager job (DOT No. 920.685-078) in response to the ALJ's hypothetical question, which included no concentrated exposure to hazards such as moving mechanical parts, but the DOT indicates the job requires tending a machine that performs one or more packaging functions (*Id.*) (citing Tr. 19).

13

Plaintiff reasons as the vocational expert was unaware of the above conflicts between her testimony and information in the DOT, her testimony cannot substantiate Finding No. 10 (*Id.* at PageID # 1497-98) (citing Tr. 61-62).   Alternatively, Plaintiff argues as the vocational expert's testimony conflicts with the Agency's policy on the standing/walking requirements for medium work, it cannot substantiate Finding No. 10 (*Id.* at 1498-99) (citing SSR 83-10).[10]   Plaintiff also contends the vocational expert's testimony cannot substantiate Finding No. 10 because she relied on obsolete vocational information from the DOT, instead of using O*NET which has up-to-date vocational information (*Id.* at PageID # 1499-1500) (citing *Cunningham v. Astrue*, 360 F. App'x 606, 615 (6th Cir. 2010); *Gordon v. Berryhill*, No. 4:18 CV-00055-HBB, 2019 WL 360525, at *9-10 (W.D. Ky. Jan. 29, 2019)).

In response, Defendant asserts the ALJ, when making Finding No. 10, reasonably relied on the vocational expert's testimony that Plaintiff could perform the representative jobs of laundry laborer, counter supply clerk, and machine packager (DN 15 PageID # 1512-15) (citing Tr. 23-24, 58-60).   Defendant believes that the ALJ appropriately determined that any inconsistencies between the vocational expert's testimony and the information contained in the DOT were properly addressed under SSR 00-4p, and that the jobs identified are being performed in the modern economy similarly to how they are described in the DOT (*Id.*) (Tr. 23-24, 57-60).   For example, the ALJ specifically inquired whether the jobs provided would still be available with the reduction in standing and walking to four hours in an eight-hour workday and the occasional use of a cane

---

10 Plaintiff explains that the ALJ's hypothetical question expressly limited standing and/or walking to four hours in an eight-hour day with occasional use of a cane for ambulation (Tr. 58-59).   The vocational expert's testimony in response identified the laundry laborer, counter supply clerk, and machine packager jobs (Tr. 59-60).   Plaintiff reasons as the DOT classifies these three jobs as performed at the medium exertional level, these jobs must necessarily involve standing and/or walking for about six hours in an eight-hour workday (*Id.* at 1498-99) (citing SSR 83-10).   Consequently, there is a fatal conflict between the vocational expert's testimony and the Agency's policy regarding the standing/walking requirements for medium work (*Id.*) (citing SSR 00-4p).

for ambulation, and the vocational expert responded that the jobs would be available (*Id.*) (citing Tr. 60).   Additionally, the ALJ inquired whether the vocational expert's testimony was consistent with the DOT, and the vocational expert responded in the affirmative but qualified by identifying a non-exhaustive list of limitations not addressed in the DOT, to which the vocational expert responded based upon her training, education, and experience in the field (*Id.*) (citing Tr. 62). Defendant points out that Plaintiff's counsel was given the opportunity to question the vocational expert but declined (*Id.*) (citing Tr. 61).   Defendant also points out that the Sixth Circuit does not require an ALJ to investigate the accuracy of the vocational expert's testimony beyond the inquiry mandated in SSR 00-4p (*Id.*).   *See Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 168 (6th Cir. 2009); *Christopher W. v. Kijakazi*, No. 5:22-CV-00063-LLK, 2022 WL 16951335, at *4 (W.D. Ky. Nov. 15, 2022).   Defendant responds to Plaintiff's complaint—the vocational expert relied on obsolete job descriptions in the DOT—by pointing out that it was discounted by the Sixth Circuit in *O'Neal v. Comm'r of Soc. Sec.*, 799 F. App'x 313, 317 (6th Cir. 2020) and the ALJ confirming that the identified jobs are currently being performed similar to how they are described in the DOT (*Id.* at PageID # 1515-16) (citing Tr. 61).

In reply, Plaintiff reiterates her position that the ALJ, despite having a duty to do so under SSR 00-4p, failed to resolve the apparent conflicts in the record before relying on the vocational expert's testimony to support Finding No. 10 (DN 16 PageID # 1520).   Plaintiff also reiterates her position that the vocational expert relied on obsolete job descriptions in the DOT (*Id.* at PageID # 1521-24).   Plaintiff asserts that *O'Neal* merely found that the DOT continued to be a source of reliable information that may be relied upon by an ALJ (*Id.* at PageID # 1521-24).   Plaintiff

15

contends that *O'Neal* did not negate the fact that specific job descriptions in the DOT are obsolete as found by this Court in *Gordon* 2019 WL 360535, at *10 (*Id.*).

    2. *Applicable Law*

    At the fifth step, the Commissioner has the burden of demonstrating a significant number of jobs exist in the national economy that the claimant can perform, given his or her residual functional capacity, age, education, and past work experience.   20 C.F.R. §§ 404.1520(a)(4)(v) and (g), 404.1566(a); *Wyatt v. Sec'y of Health & Hum. Servs.*, 974 F.2d 680, 684 (6th Cir. 1992); *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980).   When a claimant's age, education, previous work experience, and residual functional capacity coincide with all of the criteria of a particular Grid Rule in Appendix 2 of the regulations, referred to as the medical-vocational guidelines, the Commissioner may rely on that Grid Rule to meet this burden.   20 C.F.R. § 404.1569; Grid Rule 200.00; *Born v. Sec'y of Health & Hum. Servs.*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Moon*, 923 F.2d at 1181.   However, if a claimant's age, education, previous work experience, and residual functional capacity do not coincide with all the criteria of a particular Grid Rule, the Commissioner is limited to using the Grid Rule as a framework in the decision-making process and must make a non-guideline determination based on the testimony of a vocational expert.   20 C.F.R. § 404.1566(e); *Born*, 923 F.2d at 1174; *Varley v. Sec'y of Health & Hum. Servs.*, 820 F.2d 777, 779 (6th Cir. 1987); *Kirk v. Sec'y of Health & Hum. Servs.*, 667 F.2d 524, 531, 535 (6th Cir. 1981).   For example, if the claimant suffers from an exertional and a non-exertional impairment then the Grids may be used only as a framework to provide guidance for decision making.   20 C.F.R. § 404.1569a(d); 20 C.F.R. Part 404, Subpart P,

Appendix 2, § 200.00(e); *Abbot v. Sullivan*, 905 F.2d 918, 926-927 (6th Cir. 1990); *Cole v. Sec'y of Health & Hum. Servs.*, 820 F.2d 768, 771 (6th Cir. 1987); *Kirk*, 667 F.2d at 528-29.

A vocational expert's testimony can constitute substantial evidence to support the Commissioner's finding that a plaintiff is capable of performing a significant number of jobs existing in the national economy, *Bradford v. Sec'y, Dep't. of Health & Hum. Servs.*, 803 F.2d 871, 874 (6th Cir. 1986) (*per curiam*), so long as a vocational expert's testimony is based on a hypothetical question which accurately portrays the claimant's physical and mental impairments. *Varley v. Sec'y of Health & Hum. Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). If the vocational expert identifies a significant number of jobs existing in the national economy that the claimant could perform, that testimony constitutes substantial evidence to satisfy the legal standard that the Commissioner must meet. *See e.g., McCormick v. Sec'y of Health & Human Servs.*, 861 F.2d 998, 1000, 1002 (6th Cir. 1988) (4,000 to 5,000 jobs in Michigan); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988) (1,350 to 1,800 jobs in the nine-county area of Dayton, Ohio).

### 3. Discussion

Plaintiff argues the ALJ failed to comply with his obligation under SSR-04p to resolve the apparent conflicts between the vocational expert's testimony and information in the DOT concerning whether certain exertional, postural, and environmental limitations in the ALJ's hypothetical question would preclude Plaintiff from performing the laundry laborer, counter supply clerk, and machine packager jobs (DN 13 PageID # 1496-98). Additionally, Plaintiff asserts that the vocational expert relied on obsolete vocational information in the DOT (*Id.* at PageID # 1499-1500).

In pertinent part, SSR 00-4p reads:

Occupational evidence provided by a VE [vocational expert] or VS [vocational source] generally should be consistent with the occupational information supplied by the DOT.   When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict.   The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

. . .

Reasonable explanations for such conflicts, which may provide a basis for relying on the evidence from the VE or VS, rather than the DOT information, include, but are not limited to the following:

Evidence from VEs or VSs can include information not listed in the DOT.   The DOT contains information about most, but not all, occupations.   The DOT's occupational definitions are the result of comprehensive studies of how similar jobs are performed in different workplaces.   The term "occupation," as used in the DOT, refers to the collective description of those jobs.   Each occupation represents numerous jobs.   Information about a particular job's requirements or about occupations not listed in the DOT may be available in other reliable publications, information obtained directly from employers, or from a VE's or VS's experience in job placement or career counseling.

SSR 00-4p, 2000 WL 1898704, at * 2 (Dec. 4, 2000).

The ALJ's RFC determination is identical to the second hypothetical question posed to the vocational expert (*compare* Tr. 19 *with* Tr. 58-59).   In response to the second hypothetical question, the vocational expert testified that the hypothetical individual would be able to perform the following: laundry laborer job, DOT No. 361.687-018, medium, unskilled, SVP of 2, and

approximately 50,000 such jobs nationally; counter supply clerk job, DOT No. 319.687-010, medium, unskilled, SVP of 2, and approximately 50,000 such jobs nationally; machine packager job, DOT No. 920.685-078, medium, unskilled, SVP of 2, and approximately 100,000 such jobs nationally (Tr. 59).   Additionally, the ALJ expressly asked, and the vocational expert confirmed that the hypothetical individual would still be able to perform these identified jobs despite the reduction in standing and walking for four hours of an eight-hour workday and the occasional use of a cane for ambulation (Tr. 60).   Notably, Plaintiff's counsel was provided the opportunity to question the vocational expert but declined (Tr. 61).

The ALJ explicitly asked the vocational expert if her testimony had "been consistent with the DOT or are there other areas that we need to [be] aware of where we might be having conflicts or issues" (Tr. 61-62).   The vocational expert responded as follows:

> Your Honor, it has been consistent with the DOT.   However, the DOT does not consider things such as elevating the legs, a sit- stand option, social interaction or the use of a cane.   It also does not break out climbing between ladders and stairs, so for those parts of my testimony or any part of my testimony that cannot be found directly in the DOT[,] I rely on my training, education and experience in the field for those.

(Tr. 62).   The Sixth Circuit has explained:

> All that is required before an ALJ can rely on vocational evidence provided by a vocational expert is that the ALJ either ensure that the evidence does not conflict with the information in the DOT or obtain a reasonable explanation for any conflict.

*O'Neal v. Comm'r of Soc. Sec.*, 799 F. App'x 313, 317 (6th Cir. 2020) (citing *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 603 (6th Cir. 2009) (citing SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000)); *Gallo v. Comm'r of Soc. Sec.*, 449 F. App'x 648, 650 (9th Cir. 2011) ("[Vocational expert] testimony may become unreliable on account of a conflict with the DOT, but not on

account of its compliance with the DOT." (citation omitted)).    Here, the ALJ obtained a reasonable explanation for any conflict between the vocational expert's testimony and the DOT (Tr. 61-62).

In pertinent part, the ALJ's decision reads:

> The vocational expert's testimony is generally consistent with the information contained in the Dictionary of Occupational Titles. The vocational expert testified that the portion of her testimony that is not specifically addressed by the DOT is based on an examination of the information contained in the DOT, paired with her years of experience in the field of vocational rehabilitation (Exhibit B12E). The undersigned accepts this testimony pursuant to SSR 00-4p.

(Tr. 24).   Consequently, the ALJ has fully complied with his obligations under SSR 00-4p. *O'Neal*, 799 F. App'x at 317.[11]

Plaintiff is also challenging Finding No. 10 by arguing the vocational expert's testimony is based upon obsolete job descriptions in the DOT.   The Sixth Circuit, albeit in an unpublished opinion, previously cautioned that "*common sense dictates*" when job descriptions in the DOT "appear obsolete, a more recent source of information should be consulted."   *Cunningham v. Astrue*, 360 F. App'x 606, 615 (6th Cir. 2010) (emphasis added).   Several district courts in the Sixth Circuit followed *Cunningham* and remanded matters to the Commissioner when the vocational expert's reliance on potentially obsolete job descriptions from the DOT raised sufficient doubt whether substantial evidence supported the ALJ's determination at the fifth step.   *See e.g.*

---

11 Because nothing in SSR 00-4p imposes an affirmative duty on the ALJ to independently determine whether the vocational expert's testimony is correct, the Sixth Circuit in *O'Neal v. Comm'r of Soc. Sec.* concluded that the claimant must develop any potential challenges to the vocational expert's testimony through cross-examination during the hearing.   799 F. App'x 313, 318 (6th Cir. 2020); *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 2006).   To the extent Plaintiff failed to cross-examine the vocational expert about purported contradictions between the DOT's descriptions and the testimony of the vocational expert, the Court holds that Plaintiff forfeited his claim by failing to develop it through cross-examination, and the vocational expert's testimony constitutes substantial evidence to support Finding No. 10.

*Wright v. Berryhill*, No. 4:18-CV-00021, 2019 WL 498855, at \*9 (W.D. Ky. Feb. 8, 2019); *Westmoreland v. Berryhill*, No. 3:17-cv-00096, 2018 WL 1522118, at \*4 (S.D. Ohio Mar. 28, 2018); *Rollston v. Comm'r of Soc. Sec.*, No. 1:16-CV-168, 2016 WL 6436676, at \*4 (W.D. Mich. Nov. 1, 2016).   Other district courts within the Sixth Circuit criticized *Cunningham's* reasoning and declined to follow its holding.   *See e.g. Kidd v. Berryhill*, No. 5:17-CV-420-REW, 2018 WL 3040894, at \*7-10 (E.D. Ky. June 19, 2018); *Montano v. Comm'r of Soc. Sec.*, No. 1:13-cv-70, 2014 WL 585363, at \*15 (S.D. Ohio Feb. 14, 2014); *Belew v. Astrue*, No. 2:11-107-DCR, 2012 WL 3027114, at \*9-10 (E.D. Ky. July 24, 2012).

In an unpublished order, the Sixth Circuit attempted to resolve the apparent confusion among some of the district courts.   *O'Neal v. Comm'r of Soc. Sec.*, 799 F. App'x 313, 316-18 (6th Cir. 2020).   Because the regulations continue to recognize the DOT as a source of reliable information and the claimant did not to cross-examine the vocational expert about the DOT job descriptions when he had the opportunity, the Sixth Circuit held the vocational expert's testimony constitutes substantial evidence to support the ALJ's finding that the claimant was able to perform work that existed in significant numbers in the national economy.   *Id.*

Applying the holding in *O'Neal* to the circumstances before the Court, Plaintiff's counsel declined to question the vocational expert (Tr. 61).   Because nothing in SSR 00-4p imposes an affirmative duty on the ALJ to independently determine whether the vocational expert's testimony is correct, the Sixth Circuit in *O'Neal* concluded that the claimant must develop any potential challenges to the vocational expert's testimony through cross-examination during the hearing. 799 F. App'x at 318; *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 2006). Consequently, to the extent Plaintiff failed to cross-examine the vocational expert about the

purported obsolescence of the DOT job descriptions at issue, the Court holds that Plaintiff forfeited his claim by failing to develop it through cross-examination, and the vocational expert's testimony constitutes substantial evidence to support Finding No. 10.   Notwithstanding, the ALJ's did question the vocational expert about the obsolescence of the DOT job descriptions at issue (Tr. 61).   The vocational expert confirmed that she had reviewed the DOT descriptions for the three identified jobs and compared those descriptions with other resources to determine that the jobs are currently being performed in the modern economy similar to how they are described in the DOT (*Id.*).   Additionally, the ALJ's decision specifically mentions this exchange in the context of explaining why the ALJ accepted the vocational expert's testimony and relied upon it in making Finding No. 10 (Tr. 24).   Considering the holding in *O'Neal*, the vocational expert's testimony constitutes substantial evidence to support the ALJ's finding that Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. For these reasons, Plaintiff is not entitled to relief on her challenges to Finding No. 10.

### E.   Conclusion

As the Court noted previously, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion . . ."   *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (cleaned up).   Regardless of how this Court may view the evidence, it is not this Court's place to re-try or re-evaluate the findings of the ALJ.   42 U.S.C. § 405(g). Rather, this Court is only to find if substantial evidence exists to support the ALJ's decision and if the ALJ followed the applicable law.   *Id.*   After reviewing the record, the Court concludes that

the ALJ's determination is supported by substantial evidence in the record and correctly followed the applicable law.   Therefore, Plaintiff is not entitled to relief with regard to her challenge.

IV.    ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

August 21, 2024

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

Copies:       Counsel

23